

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Faul T. Holt
County Attorney
Travis County
Austin, Texas

Attention: Wm. Yelderman

Dear Sir:

Opinion No. 0-5642
Re: Construction of Chapter 370,
page 651, Acts of 1943, now
Article 1661, 1, Vernon's Revised
Civil Statutes.

This will acknowledge receipt of your letter of recent date requesting
the opinion of this department as to the proper construction to be
placed upon the above designated chapter enacted by the 48th Legis-
lature. We quote in part from your letter as follows:

"Conditions existing in this County, particularly in the
City of Austin, make it necessary to construe the Act of
1943, 48th Legislature, p. 651, Chapter 370, now Art. 1661.1,
Pocket Parts, Vernons Revised Statutes, 1943.

"The Act seems to me to be indefinite and uncertain in
several respects, among others, are these:

"1. The Act provides that the owners, etc., of motor buses
'shall provide and require that all white persons boarding
their buses for transportation or passage shall take seats
in the forward or front end of the bus, filling the buses
from the front end, and that all negro passengers boarding the
bus for transportation or passage shall take seats in the
back or rear end of the bus, filling the bus from the back
or rear end.'

"Does the words 'filling the bus' mean filling the seats only
or filling the seats and standing room in the aisles as well.

"2. Assume that all seats in the bus are filled by one race
before any of the other race enters the bus, has the operator
of the bus the legal authority to require any of the race so
seated to vacate their seats to make room for members of the
other race entering the bus after all the seats were occupied.

"3.  Assume that all seats in the bus are occupied  as
stated in '2' above by negroes, and there is nothing but
standing room left, and white passengers enter, can they
lawfully take their places in the rear of the bus or are
they required to begin standing in the front end of the
aisle?

"4.  Assume the bus was filled with white passengers beginning
at the front and negro passengers beginning at the rear of
the bus, and negro passengers leave the bus while white pas-
sengers are standing, can the operator lawfully require negro
passengers immediately behind the whites to take the
vacated seats and make  room for the standing white passengers,
and in case white passengers leave the car and leave colored
passengers standing, could the operator lawfully require white
passengers immediately in front of the negro passengers to
get up and occupy the vacated seats and make room for the
standing negro passengers?

"5.  Assume the bus were filling up with white or negro pas-
sengers at a point where passengers of the other race always
boarded the bus or were standing off waiting to enter, could
the operator lawfully require the race filling the  bus to
leave seats for the other race in its proper end of the bus?
In other words, would the operator have the legal right to
require the race entering the car to reserve seats for the
race expected or waiting to enter.

"6.  Has the operator of a bus the legal right to require
either race to reserve or leave seats for the others in its
proper end of the car?

"7.  In instances where sufficient numbers of one or the
other race has boarded the buses and occupied all seating
space, and then persons of the opposite race began boarding
the bus, has the operator of the bus the legal authority to
require seated passengers of either race to relinquish
seats, and move backward or forward, filling standing and
seating room in their end of the bus in order that the
races might be kept separated, or should the seated
passengers be permitted to retain their seats, and boarding
passengers forced to stand in the aisles between seated
persons of the opposite race?

"8.  Under the provisions of the Act, has a transportation
company the legal authority to make provision for the
reservation, when needed, of one or more seats for negroes,
at the rear of the bus, and, when needed, one or more seats
at the front of the bus for white persons?

"9.  Where capacity of seat is greater than necessary to reserve for either race, can space on seat be separated by bar or marker, to provide for seating of both races  on same seat?

"10.  Where more than one seat of two or more capacity is occupied by a member of the same race, can they be required to seat themselves together in order to provide more seats for the opposite race?

"11.  If the Act under consideration is inoperative and void, for any reason, has the City Council of the City of Austin the legal authority to pass an Ordinance providing for separate space in buses for the white and colored races?

"12.  Has the City Council the authority to pass an Ordinance authorizing the operator of a bus to reserve seats for the colored people in the rear and seats for the white people in the front of the bus?

"13.  Is the Act under consideration valid and constitutional or is it void for uncertainty?

"  .  .  ."

Article 1661.1, Vernon's Revised Civil Statutes, in part, provides:

"Section 1.  Separation of Races in Motor Buses.

"'That every transportation company, lessee, manager, receiver and owner thereof, operating motor buses in this State as a carrier of passengers for hire shall provide and require that all White passengers boarding their buses for transporatation or passage shall take seats in the forward or front end of the bus, filling the bus from the front end and that all Negro passengers boarding their buses for transportation or passage shall take seats in the back or rear end of bus, filling the bus from the back or rear end.'

"  .  .  .  .

"Sec. 3.  Authority of Bus Operator.

"'The operators of all passenger motor buses in this State shall have authority to refuse any passenger or person the right to sit or stand in any motor bus unless such passenger or person shall comply with the provisions of this Act, and such operator shall have the right and it shall be his duty to call any peace officer of the State of Texas for the purpose

of removing from any bus any passenger who does not comply
with the provisions of this Act, and any such peace officer
shall have the right and it shall be his duty to remove from
said bus, and to arrest any such passenger so violating this
Act, the same as if such person were committing a breach of
the peace in the presence of such officer.'

"Sec. 4.  Penalty.

"'If any passenger upon any bus in this State shall ride or
attempt to ride on said bus in a place prohibited under the
provisions of this Act, he shall be guilty of a misdemeanor
and upon conviction thereof shall be fined not less than
Five Dollars ($5) nor more than Twenty-five Dollars ($25).'

". . . ."

We will render our opinion upon your submitted queries by a general
discussion in lieu of specific examination of each particular
question and thus prevent undue repitition of our views and the
reasons in support thereof.

Article 1661.1, supra, was presumably passed by the recent Legislature
in the spirit in which previous legislation with reference to segregation
of races by carriers has been enacted.  The subject matter of the Act
under discussion is nothing new  in legislation; in Texas there has been
such a statute, commonly called "Separate Coach Law," in effect since
1891 dealing with carriers which operate upon rails.  See Article 6417,
Vernon's Revised Civil Statutes and Article 1659, Penal Code.  The
purpose for such legislation, as revealed by the emergency clause of
the bill under consideration, is very aptly stated by the court in the
case of Westchester & Philadelphia R. Co. v. Miles, 55 Pa. 209, 93
Am. Dec. 744;

". . . It is not an unreasonable regulation to seat passengers
so as to preserve order and decorum and to prevent contacts
and collision arising from natural or well-known customary
repugnances,  which are likely to breed disturbances by promiscuous
sitting. It is much easier to prevent difficulty among pas-
sengers by regulation for their proper separation than it is
to quell them.  The danger to the peace engendered by a feeling
of aversion between individuals of the different races cannot
be denied.  It is the fact with which the company must deal.
If a negro takes a seat beside a white man, or his wife or
daughter, the law cannot repress the anger or conquer the
aversion which some will feel. However unwise it may be to
indulge the feeling, human infirmity is not always proof
against it.  It is much wiser to avert the consequences of
this repulsion of race by separation than to punish afterwards
the breach of the peace it may have caused."

The principle followed by the Federal and State courts as to whether or not segregation of races contravene any constitutional provision is not the identity of the accomodation but rather the equality of the accomodation. Hall v. De Cuir, 95 U. S. 505, 24 L. Ed. 547; Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256; Texas & P. Ry. Co. v. Baker, 215 S. W. 556 (Com. App.); Chiles v. Chesapeake & O. Ry. Co., 101 S. W. 386 (Ky). By this, we mean the test is not whether a race or a portion of a race is separated from other races or groups thereof, but whether the accomodations offered each race or portion are reasonably equal in every respect and no undue discrimination is present. We are of the opinion Article 1661.1, supra, causes no undue discrimination between the races. The law was enacted for the protection of passengers, white and negro alike; the separation will prevent conditions most likely to provoke unlawful acts and thus ward off for both races pains of the nature of physical suffering and pains of the nature of fines. The accomodations offered both races are equal in every respect; the comforts and conveniences provided are the same not withstanding race or color.

It is quite evident from reading Section 1 of Article 1661.1, supra, that the white and negro passengers should be separated; the former being placed at the front end of the bus and the latter placed at the rear, and keeping with- in the spirit of the law, the races should be separated whether sitting or standing.

The Legislature in enacting this bill saw fit to provide a penalty only for failure of the passengers who violate the provisions of the Act. There are no provisions for a definite space allotment to the different races or penalties prescribed if the carrier or operator fail to abide by the provisions of the Act as is provided in the Separate Coach Law. Possibly the Legislature deemed it unwise and impracticable to allot specific space to each race considering the elasticity of the number of each race riding at different periods of time. We believe these facts are relevant and important however in construing this Act. It appears the Legislature is allowing the operator to use his discretion in placing the parties on the bus with the general instructions as to the proper segregation. In other words, the manner and method of separating the races are within the discretion of the operator of the bus; the seating and standing of each person will naturally depend upon each circumstance and as long as the operator does not abuse this discretion and follows the spirit of the law, he possesses the authority to instruct any person where to stand or sit on the bus. If the passenger does not abide by these reasonable instructions, the remedies of the operator are set out in Section 3 of the Act.

In the absence of specific provisions as to the allotment of space, we are of the opinion the foregoing is the only reasonable construction that can be placed upon the Act as to the placing of the passengers; that is, it is with-in the discretion of the operator and as long as he carries forth the spirit of the law, he has the privilege to reserve places and seat the passengers as he deems best for the occasion.

Very truly yours

ATTORNEY GENERAL OF TEXAS

s/ Robert O. Koch

By
Robert O. Koch
Assistant

ROK:DB/ldw

APPROVED OCT. 20, 1943
s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY B. W. B.
CHAIRMAN